UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| **WILLIAM MOTT**, *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>**ZR CONSULTING LLC**,<br><br>Defendant. | Case No.: 2:25-cv-00081-SCJ |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MOTION FOR TEMPORARY STAY OF FURTHER PROCEEDINGS AND BRIEFING ON THAT MOTION**

William Mott ("Plaintiff") hereby moves this Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(3) and Local Rule 23.1, and respectfully requests that ruling on this motion be stayed until the completion of discovery. The following is stated in support thereof:

## I. INTRODUCTION AND PROCEDURAL POSTURE

1. On April 3, 2025, Plaintiff filed his Class Action Complaint [Dkt. 1]. Plaintiff alleges, on behalf of himself and all others similarly situated, that ZR Consulting, LC ("Defendant") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") when Defendant placed prerecorded or artificial voice calls to his cellular telephone without his consent.

2. This matter presents a textbook case for class certification. Defendant unlawfully initiated prerecorded or artificial voice calls to at least hundreds of consumers' cellular telephone numbers without their prior express written consent in an effort to generate leads that Defendant could sell to third parties. Through that conduct, Defendant not only violated the privacy of each member of the putative class, but repeatedly violated the TCPA, thereby entitling those consumers to statutory damages and injunctive relief.

3. Plaintiff seeks an order certifying the following class:

> Plaintiff and all persons and entities throughout the United States to whom ZR placed a call, or had a call placed on its behalf, directed to a number assigned to a cellular telephone service, with an artificial or prerecorded voice, from four years prior to the date of this class action complaint through the date of class certification

[Dkt. 1 at 9]. Plaintiff also asks this court to temporarily stay further proceedings and briefing on this motion, so that Plaintiff may supplement this motion with record evidence once Defendant appears, answers, and Plaintiff has an opportunity to take discovery.

4. Absent a stay of further proceedings on this motion, Plaintiff and the proposed class and the interest of justice may be prejudiced if they are denied an opportunity to take discovery before the Court considers Plaintiff's Motion. Indeed, courts often need more than the pleadings to determine if a class should be certified. *See Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1309 (11th Cir. 2008) (explaining

district courts will "often . . . need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified."); *Argentine v. Bank of Am. Corp.*, No. 8:15-cv-957, 2015 U.S. Dist. LEXIS 98946, 2015 WL 12844395, at *1 (M.D. Fla. July 29, 2015) ("the court must be particularly hesitant to decide matters against a class in view of the absence of a developed factual record."); *Desmond v. Citimortgage, Inc.*, No. 12-cv-23088, 2015 U.S. Dist. LEXIS 22850, 2015 WL 845571, at *2 (S.D. Fla. Feb. 25, 2015) (holding that determination of class certification should be done after filing of formal motion for class certification with benefit of discovery).

5. Plaintiff seeks to adjudicate the merits of his claims on a class-wide basis. However, the present deadline for any motion for class certification to be filed is August 4, 2025. [*See* dkt. 7 and June 30, 2025 Docket Order]. Plaintiff has sought an extension of this deadline [*see* dkt. 8] but files this Motion to comply with the Court's Order.

6. Despite the utmost diligence, complete briefing on the class certification issues cannot be met by the present class certification deadline. Defendant's deadline to answer or otherwise file a response to Plaintiff's Class Action Complaint is August 8, 2025 and no counsel for Defendant has yet entered an appearance. [*See* dkt. 6]. Operating under the Court's Order, Plaintiff is required

to submit a fully briefed Motion for Class Certification without the benefit of either Defendants' responsive pleading or any discovery.

7. Therefore, Plaintiff is filing this Motion at the present juncture to ensure compliance with the Court's present deadline but is requesting a stay of further briefing to permit Plaintiff to supplement this Motion with record evidence upon the completion of discovery, and to provide the Defendant's a fair opportunity to respond.

## II. FACTUAL BACKGROUND

Plaintiff is the user of a personal cellular telephone. [Dkt. 1 ¶ 18]. On November 18, 2024, Plaintiff received a prerecorded telephone call from Defendant. [*Id.* ¶ 19]. The call left the following prerecorded voicemail message on Plaintiff's voicemail:

> Hey! This is Heather Nguyen with Relief Services. Call me back at 866-381-3013. And, um it looks like you still owe some back taxes. I'm calling because you're eligible to apply to have them eliminated with the total tax forgiveness program. Your tax balances can be enrolled to be forgiven through this program, but um we need to enroll now. So give us a quick call so we can get you set up. It's pretty simple and fast. Just a one-time process. I'll keep your account open so you can call back. Um again, my number is 866-381-3013. If you've already handled this callback and press two to opt out. Thanks.

[*Id.* ¶ 21]. Numerous consumers have made complaints about Defendant's calls. [*Id.* ¶¶ 22-23]. In an effort to identify the company that called him, Mr. Mott

returned the call and was contacted to Remedy Tax Solutions, LLC. ("Remedy") [*Id.* ¶¶ 24-26]. Remedy advised Mr. Mott that it hired and paid Defendant $17,500 to provide lead generations services and provide leads to Remedy. [*Id.* ¶ 27].

To obtain leads, Defendant blasts out thousands of unsolicited prerecorded telemarketing messages to generate return calls that Defendant can convert to leads it call sell to companies like Remedy. [*Id.* ¶ 28]. Defendant charges its clients $6 per prerecorded voicemail and represents that 1/105 of these voicemails should result in a closed deal or conversion. [*Id.* ¶ 29]. Plaintiff alleges that Defendant obtains lists of telephone numbers of consumers that did not consent to be called.

Accordingly, Plaintiff seeks $500 in damages for each TCPA violation, as well as treble damages for willful or knowing violations of the law, injunctive relief, and an award of reasonable attorney's fees and costs. 47 U.S.C. § 227(b)(3). Plaintiff also seeks to certify the following class:

> Plaintiff and all persons and entities throughout the United States to whom ZR placed a call, or had a call placed on its behalf, directed to a number assigned to a cellular telephone service, with an artificial or prerecorded voice, from four years prior to the date of this class action complaint through the date of class certification.

[*Id.* ¶ 45].

## III. THE PROPOSED CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION

District courts maintain broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992) (citation omitted). "[I]n ruling upon a motion for class certification, the substantive allegations contained in plaintiffs' complaint are accepted as true." *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 591 (N.D. Fla. 1998) (citation omitted).

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Fed. R. Civ. P. 23; *Klay v. Humana, Inc.,* 382 F.3d 1241, 1250 (11th Cir. 2004). Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named representative and his counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a); *Babineau v. Fed. Exp. Corp.,* 576 F.3d 1183, 1189–90 (11th Cir. 2009). In order to certify a class under Rule 23(b)(3), (i) questions of law or fact common to the proposed class members must predominate over any questions affecting only individual members, and (ii) the class

mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Klay,* 382 F.3d at 1251. The proposed class, as defined above, meets all of the applicable certification requirements.

**A. The members of the class are so numerous that joinder of all of them is impracticable.**

Rule 23(a) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While Rule 23 does not identify a threshold number to establish numerosity, joinder is considered impractical when a class numbers at least forty members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986); *see Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (concluding that a district court did not abuse its discretion in finding that the numerosity requirement had been met where a plaintiff identified at least 31 individual class members). In the TCPA context, "[a] class of forty generally satisfies the numerosity requirement." *Savanna Grp., Inc. v. Trynex*, Inc., No. 10-cv-7995, 2013 WL 66181, at *4 (N.D. Ill. Jan. 4, 2013); *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012) (similar).

In this case, based on the anticipated number of individuals called, it is readily apparent that the number of consumers in the class will be large as to make joinder impractical, if not impossible. The number and identifying information of class members will be ascertained throughout discovery. However, based upon the

information available to Plaintiff at this stage, it is believed that the Class consists of at least hundreds, if not thousands, of consumers. For example, Remedy paid Defendant $17,500 for Defendant to place prerecorded calls. [Dkt. 1 ¶27]. Defendant charges $6 per prerecorded voicemail. [*Id.* ¶ 29]. Based on these figures, it is reasonable to believe that Defendant made at least 2,900 calls to 2,900 class members. Again, Plaintiff will provide more accurate supplemental information upon receipt of Defendants' discovery responses.

**B. Questions of law and fact are common to the members of the class.**

The element of commonality requires a court to find that "there are questions of law or fact common to the class." See Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, a plaintiff must demonstrate that the class action involves issues susceptible to class-wide proof. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (citation omitted). Essentially, the moving party must show that the determination of the truth or falsity of a common contention will resolve an issue that is central to the validity of each of the claims in one stroke. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality therefore requires "at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams*, 568 F.3d at 1355 (citation and quotation omitted). Notably, "Rule 23 does not require that all the questions of law and fact

raised by the dispute be common." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986) (citations omitted).

"Class certification is normal in litigation under § 227, because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). Here, Plaintiff asserts that the facts will demonstrate that Defendant did not have consent to call his cellular telephone number using a prerecorded voice or the other class members. In addition, Plaintiff asserts that each class member suffered the same injury as a result of Defendant's calls. Accordingly, many common questions applicable to the Class exist, including:

- Did Defendant use an artificial or prerecorded voice in placing its calls?
- Were class members damaged by Defendant's calls?
- Were the calls made without the requisite prior express consent?

In the context of prerecorded messages, the absence of consent demonstrates commonality and supports certification. *See Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 11894430, at *3 (S.D. Fla. Sept. 29, 2014) (finding that "common questions . . . apt to drive the resolution of the case, includ[e] (1) whether [the defendant] placed the calls at issue; [and] (2) whether it did so using a[] . . . prerecorded or artificial voice").[1] Defendant's conduct of causing prerecorded voice

---

[1] *See also Knapper v. Cox Communs., Inc.*, 329 F.R.D. 238, 242 (D. Ariz. 2019) ("Whether Defendant used a[] . . . prerecorded voice to allegedly call the putative class members would produce an answer that is central to the validity of

messages to be sent to individuals for whom it lacked adequate evidence of express consent raises common questions, the truth or falsity of which would resolve the claims in this case in one stroke. *See Dukes*, 564 U.S. at 350.[2]

For these reasons, this Court should hold that Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

**C. Plaintiff's claims are typical of the claims of the members of the class she represents.**

---

each claim in one stroke."); *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *4 (E.D. Cal. July 6, 2020) ("Here, the case presents the common legal issue of whether Defendant used . . . [a] prerecorded voice message to make unsolicited calls regarding a purported debt. This issue is common to all putative class members and thus, the commonality requirement is met."); *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 328 (W.D. Okla. 2018) ("Core allegations require determination of a number of common questions of fact and law, including: (1) whether the soundboard/avatar files used in the calls qualify as a 'prerecorded voice' prohibited by the TCPA[.]"); *Birchmeier v. Caribbean Cruise Line, Inc.,* 302 F.R.D. 240, 251 (N.D. Ill. 2014) (finding commonality where class members "received the same [non-consensual] calls offering a free cruise in exchange for a political or public opinion survey, made by or for one of the defendants, using the same artificial or prerecorded voice technology"); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 104 (N.D. Ill. 2013) (finding as questions "common to the class . . . (2) whether [the defendant's] dialer delivers pre-recorded messages").

[2] See also *Lavigne v. First Cmty. Bancshares, Inc.*, No. 15-00934, 2018 WL 2694457, at *4 (D. N.M. June 5, 2018) ("Plaintiff identifies a number of common questions of law or fact: . . . . whether the class suffered the same injury, receipt of call in violation of the TCPA."); *Gehrich v. Chase Bank USA, N.A.*, No. 12 C 5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier*, 302 F.R.D. at 251 ("Those who are members of one of the proposed classes by definition received the same calls. . . made by or for one of the defendants, using the same artificial or prerecorded voice technology. This is a common alleged injury presenting a common question[.]")

Rule 23(a)(3) requires a plaintiff to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality closely resembles the commonality inquiry. *See Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 456 (11th Cir. 1996). As the Eleventh Circuit explained, typicality involves the following:

> A class may be certified only if the claims or defenses of the representative parties are typical of the claims or defenses of the class. The claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). The typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories.

*Williams,* 568 F.3d at 1356-57 (internal citations, internal quotations, and internal marks omitted).

Here, typicality is satisfied for the same reason commonality is satisfied—Defendant's conduct in transmitting prerecorded voice messages to cellular telephone numbers of individuals it did not have records of express consent to call is the same as to Plaintiff as it is to other class members. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) "A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."). Plaintiff intends to demonstrate, through discovery, that Defendant did not have

consent to place such calls to Plaintiff or the class members. Accordingly, Plaintiff's claims are typical of the Class Members. Accordingly this Court should hold that Plaintiff satisfied Rule 23(a)(3)'s typicality requirement.

### D. Plaintiff and his Counsel are adequate representatives.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The moving party must demonstrate both (1) that the movant's interests and that of his or her counsel are not antagonistic to or in substantial conflict with those of the rest of the class, and (2) that the movant and his or her counsel are generally able to adequately prosecute the action and conduct the proposed litigation." *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Plaintiff has no conflicting interests with class members. In fact, by investigating, filing, and vigorously pursuing this case, Plaintiff has demonstrated a desire and ability to protect class members' interests. Plaintiff has elected not to pursue solely his individual claims in this matter, but instead is prosecuting this case on behalf of individuals, like he, who have been subjected to non-consensual prerecorded voice calls to their cellular telephone numbers. Plaintiff is an adequate representative.

Plaintiff's counsel have regularly engaged in TCPA litigation and have extensive experience in consumer class action lawsuits and complex litigation. *See*

Ex. 1, Morgan Decl.; Ex. 2, Love Decl. They therefore satisfy Rule 23(g). Accordingly, Plaintiff and Class Counsel will continue to adequately represent the Class. The requirements of Rules 23(a) and 23(g) are, therefore, satisfied.

**E. Plaintiff Satisfies Rule 23(b)(3).**

A class action may be maintained under Rule 23(b)(3) if all Rule 23(a) requirements are met and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

For the reasons set forth below, the Rule 23(b)(3) factors are met.

**1. The questions of law and fact common to the members of the class predominate over any questions potentially affecting only individual members.**

Predominance requires that common questions of law or fact predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). To satisfy the predominance requirement, a plaintiff must demonstrate that the issues in the class action subject to generalized proof, and therefore applicable to the class as a whole, predominate over the issues subject only to individualized proof. *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,*

*Inc. v. Windsor,* 521 U.S. 591, 623 (1997) (citing Wright, et al., Fed. Prac. and Proc. § 1777, p. 518-19 (2d ed. 1986)). The predominance inquiry focuses upon the legal or factual questions that qualify each class member's case as a genuine controversy. *Jackson*, 130 F.3d at 1005. Indeed, predominance requires more than just the presence of common issues. The common issues must outweigh and predominate over any individualized issues involved in the litigation. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 518 (S.D. Fla. 2013).

To state a cause of action under the TCPA, a plaintiff must allege that: (1) the defendant called a cellular phone, (2) using an automated telephone dialing system or prerecorded message or artificial voice, (3) without the recipient's prior consent. *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012). Accordingly, "the predominant issue common to all class members is whether Defendant used an . . . artificial or prerecorded voice message to make unsolicited calls . . . in violation of the TCPA[,] [and] any individualized factual questions are predominated by the common question of Defendant's general TCPA liability." *Cortes v. Nat'l Credit Adjusters, L.L.C.*, No. 216CV00823MCEEFB, 2020 WL 3642373, at *5 (E.D. Cal. July 6, 2020).

Here, the common questions set forth above are at the heart of this litigation. The claims of Plaintiff and the other members of the class all arise from Defendant's standardized conduct of initiating unauthorized prerecorded telephone calls to

cellular telephones. Evidence of the calls themselves, how Defendant made them, to what phone numbers they were made, and how Defendant dialed those phone numbers can be shown from Defendants' own records and those of the telephone service provider engaged by Defendant.

For example, it is anticipated that discovery will confirm that the number and identifying information of class members will be ascertained through programs utilized by Defendant, such as lead list or lead tracking system. Thus, the only claim at issue in this case– Defendant's alleged violation of the TCPA–will not require individual proof such that class treatment would be inappropriate. And, even if issues regarding prior express consent exist, common issues would still predominate. *See Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("The Court agrees with the Court in *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 338 (E.D. Wis. 2012), aff'd, 704 F.3d 489 (7th Cir. 2013), that any issues relating to whether any of the recipients gave permission to receive faxes prior to transmission or whether any of the plaintiffs had an established business relationship with the defendant can be handled within the framework of a class action.").

As such, the predominance requirement for certification is also satisfied.

**2. A class action is superior to other available methods for the fair and efficient adjudication of the claims of Plaintiff and the class.**

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

From the outset, litigating TCPA claims as part of a class action is generally superior to litigating them in successive individual lawsuits. *See Reliable Money Order*, 281 F.R.D. at 339 ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations."); *see also Palm Beach Golf*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). This is because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, this is true because the claims of members of the proposed class are identical, they arise from the same standardized conduct, and they result in uniform damages calculated on a per-prerecorded voice message basis:

> The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues. Therefore, the Court finds that a class action is a superior method to adjudicate this matter.

*Knapper*, 329 F.R.D. at 247.[3]

Absent a class action, thousands of claims like Plaintiff's will go un-redressed. *See Cin-Q Autos., Inc. v. Buccaneers Ltd. P'ship,* No. 8:13-cv-1592-AEP, 2022 WL 911388, at *23 (M.D. Fla. Mar. 29, 2022) ("[H]andling this matter as a class action would prove less difficult than handling hundreds of thousands of individual lawsuits.") Indeed, as the court in *Custom Hair Designs by Sandy, LLC v. Cent. Payment Co., LLC* explained:

> As Judge Posner once stated, "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30." *Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004)*. The same principle applies in this case. The amount of damages allegedly is over $100,000 million dollars. The damages for these two plaintiffs are approximately $200.00. A class action seems to be the superior method of challenging the actions of the defendant. There is no other way for the plaintiffs to address CPAY's alleged behaviors.

---

[3] *See also Lavigne*, 2018 WL 2694457, at *8 ("[T]he complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on approximately 30,000 separate cases.").

No. 8:17CV310, 2020 WL 639613, at *8 (D. Neb. Feb. 11, 2020).

There are unlikely to be any serious difficulties in the management of this case as a class action as Defendant will have documents bearing on most if not all issues. *Brown v. DirecTV, L.L.C.*, 330 F.R.D. 260, 273-74 (C.D. Cal. 2019) (certifying a TCPA class action and discussing the use of the defendant's internal records to identify potential class members). Moreover, there is no indication that any member of the class has expressed an interest in individual litigation, let alone any incentive to pursue their claims individually. Moreover, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality.

Based on the above, a class action is the superior method to adjudicate this controversy

## IV. THERE IS GOOD CAUSE FOR A TEMPORARY STAY OF FURTHER PROCEEDINGS AND BRIEFING

As discussed above, Defendant's response to Plaintiff's Complaint is not due until August 8, 2025. However, the present class certification deadline is August 4, 2025. In light of the many fact-intensive class certification issues that must be addressed before this action is ripe for complete class-certification briefing, and eventually trial, Plaintiff should be permitted to supplement this Motion with record evidentiary support upon the conclusion of discovery, and Defendants' should be permitted to file an appropriate response to this Motion.

Here, the fair administration of justice justifies a stay of further briefing and leave to supplement this Motion upon the completion of discovery. Because this Action is a putative nationwide class-wide brought pursuant to Federal law, good cause exists for supplemental briefing since the issue of class certification is critical and requires an evidentiary presentation.

As the Federal Judicial Center's Manual for Complex Litigation points out, "[c]ertification and class membership determine not only the stakes involved, but also the scope and timing of discovery and motion practice, the structure of trial and methods of proof, and the length and cost of the litigation." MCL 4th § 21.11 at p. 246. Because of the importance of certification decisions, they "should be made only after consideration of all relevant information and arguments presented by the parties." *Id.* (citation omitted).

Furthermore, because the full extent of discovery will not be known until after Defendant's initial disclosures and document production, the present briefing schedule does not leave enough time to develop "all relevant information and arguments by the parties[,]" especially when the parties do not yet know exactly what information will be relevant at the class-certification stage. *See* MCL 4th § 11.31 ("The *sine qua non* of managing complex litigation is defining the issues in the litigation. The materiality of facts and the scope of discovery (and the trial) cannot be determined without identification and definition of the controverted

issues. The pleadings, however, will often fail to define the issues clearly, and the parties may lack sufficient information at the outset of the case to arrive at definitions with certainty.”).

## V. CONCLUSION

For the foregoing reasons, Plaintiff, individually and on behalf of the proposed class, respectfully requests that the Court enter an order granting Plaintiff's Motion for Class Certification, appointing undersigned counsel as class counsel, appointing Plaintiff as class representative, and staying further briefing on this Motion until the completion of discovery, and providing all other and further relief that the Court deems equitable and just to conclude this matter.[4]

Submitted this 4th day of August, 2025.

*/s/John A. Love*
John A. Love, Esq.
Love Consumer Law
2500 Northwinds Parkway
Suite 330
Alpharetta, Georgia 30009
(404) 855-3600
tlove@loveconsumerlaw.com

Max S. Morgan, Esquire*
THE WEITZ FIRM, LLC
1515 Market Street, #1100

[4] Plaintiff respectfully reserves the right to amend the putative Class definition prior to the conclusion of this matter, subject to Court approval. Class definitions may be amended or altered at any time before final judgment. See Rule 23(c)(l)(C).

Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

Counsel for Plaintiff and the proposed class and subclass

(*admitted *pro hac vice*)

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Motion has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/John A. Love*
John A. Love, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing document has been filed via the Court's CM/ECF filing system which will cause a copy to be served upon all counsel of record.

*/s/ John A. Love*
John A. Love